AO 106 (Rev. 04/10) Application for a Search Warrant

AYC
for
AUSA Golf
7/17/19

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
JUL 18 2019
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 19mj10101
One (1) Alcatel Cellphone with black front screen and )
dark blue back )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference

located in the ___Southern___ District of ___California___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 952, 960 | Importation of Methamphetamine |

The application is based on these facts:

See attached Affidavit of Special Agent Imelda Moreno, Homeland Security Investigations

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

S.A. Imelda Moreno, Homeland Security Investigations
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/18/19

_____
Judge's signature

City and state: San Diego, CA   Hon. Ruth Bermudez Montenegro, U.S.M.J.
*Printed name and title*

# ATTACHMENT A

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Black Alcatel Cellphone with black front screen and dark blue back
> Model: Unknown
> IMEI: Unknown
> S/N: Unknown
> Found in Tamara Sue RILEY'S vehicle at time of arrest.




The **Target Telephone** is currently stored at HSI evidence locker 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

# **ATTACHMENT B**

## ITEMS TO BE SEIZED

Authorization to search the device described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of the cellular/mobile telephone shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from the device will be records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data for the period of March 1, 2019 to June 1, 2019:

a. tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

which are evidence of violations of Title 21, United States Code, §§ 952 and 960.



AYC
for
AUSA Cole
7/17/19

# AFFIDAVIT IN SUPPORT OF APPLICATION

I, Imelda Moreno, Task Force Officer with the United States Department of Homeland Security, Homeland Security Investigations, having been duly sworn, state as follows:

## I.

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant in furtherance of a narcotics smuggling investigation conducted by Special Agents and Task Force Officers of the Department of Homeland Security, Homeland Security Investigations, for the following property:

> One (1) Alcatel Cellphone with black front screen and dark blue back
> Model: Unknown
> IMEI: Unknown
> S/N: Unknown
> Found in Tamara Sue RILEY'S vehicle at time of arrest

for evidence of violations of Title 21, United States Code, Sections 952 and 960, Importation of a Controlled Substance (the Target Offense).

2. On June 1, 2019, Customs and Border Protection Officers (CBPO) seized the **Target Telephone** from Tamara Sue RILEY's (RILEY) vehicle, at the Andrade, California Port of Entry, in the Southern District of California. After RILEY applied for entry into the United States, CBPOs discovered 60 plastic wrapped packages hidden in the doors and rear quarter panels of the vehicle RILEY was driving. The packages tested positive for properties of methamphetamine. The total weight of the packages was approximately 27.28 kilograms (60.14 pounds). The **Target Telephone** is currently stored as evidence at the Homeland Security Investigations (HSI) evidence locker at 2051 North Waterman Avenue, Suite 100, El Centro, CA 92243.

3. This search of the **Target Telephone** supports an investigation and prosecution of RILEY for the Target Offense. Based on the information below, there is probable cause to believe that a search of the **Target Telephone**, as described in Attachment A, will produce evidence of the Target Offense, as described in Attachment B.

4. The following is based upon my experience and training, investigation, and consultation with other law enforcement agents and officers experienced in narcotics violations, including the Target Offense. The evidence and information contained herein was developed from my review of documents and other evidence related to this case. Because I make this affidavit for the limited purpose of obtaining a search warrant for the **Target Telephone**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only sets forth those facts believed to be necessary to establish probable cause. Dates and times are approximate, and refer to Pacific Standard Time unless otherwise specified.

## II.
## EXPERIENCE AND TRAINING

5. I have been a Federal Officer for 18 years. Since August 3, 2017, my duties and responsibilities as a Task Force Officer (TFO) for Homeland Security Investigations (HSI), Border Enforcement Security Task Force (BEST) have included the investigation of violation of various Federal criminal laws including distribution of controlled substances, and conspiracy to import, possess, and distribute controlled substances. My experience includes many arrests of individuals who have imported, smuggled, received, transported, and/or distributed controlled substances. I have actively participated in narcotics investigations and in conversations with other law-enforcement officers who are involved in narcotics investigations. I have interviewed and assisted in interviews of offenders where I have gathered intelligence to believe the cellular telephone devices that the offenders were in possession of at the time of their arrest had further evidence. Through my experience and training, I have gained a working knowledge and insight into the normal operational habits of narcotics smugglers, with particular emphasis on those who attempt to import narcotics into the United States from Mexico at the San Diego International Ports of Entry.

6. Through participation in these investigations and my training, I am aware that it is common practice for drug smugglers to work in concert with other individuals and to

2

do so by utilizing cellular telephones to maintain communications with other co-conspirators in order to further their criminal activities. Conspiracies involved in the smuggling and trafficking or drugs generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail, messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone number of co-conspirators. For example, load drivers smuggling controlled substances across the border are typically in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance.

7.  As a TFO with IV-BEST (BEST), my primary duties involve the investigation of narcotics-related violations of Title 21 of the United States Code and the California Health and Safety Code. BEST is tasked with investigating illegal narcotics trafficking organizations operating in, around, and through Imperial County, California. I have participated in and conducted investigations of violations of various state and federal criminal laws, including unlawful possession with intent to distribute controlled substances, distribution of controlled substances, use of communication facilities to commit narcotic offenses, importation of controlled substances, conspiracy to import, possess and distribute controlled substances, and money laundering, all in violation of Title 21 and Title 18, United States Code and various California Health and Safety Code and California Penal Code sections. These investigations resulted in arrests of individuals who have imported, smuggled, received and distributed controlled substances, including methamphetamine, and the arrest of individuals who have laundered proceeds emanating from those illegal activities. Also, these investigations resulted in seizures of illegal drugs and proceeds of the distribution of those illegal drugs. Through these investigations and training, I am familiar with the operations of illegal international Drug Trafficking Organizations (DTO) in various parts of the world, including Mexico.

8.  Based on my training and experience, I am familiar with the ways in which drug smugglers and traffickers conduct their business. During the course of my duties I

3

have (1) worked as a case agent, directing specific drug-related investigations; (2) worked as a surveillance agent who observed and recorded movements of individuals suspected of trafficking drugs; (3) participated in the execution of search warrants related to drug investigations; (4) initiated and executed numerous arrests for drug-related offenses; and (5) interviewed criminal defendants, witnesses, and informants in furtherance of investigations into the illegal smuggling and trafficking of controlled substances. Through these duties, I have gained a working knowledge and insight into the operational habits of drug smugglers and traffickers.

9. Through the course of my training, investigations, and conversations with other law enforcement personnel, I know that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, smart watches, pagers, and portable radios to maintain communications with co-conspirators to further their criminal activities. Conspiracies involved in the smuggling and trafficking of narcotics generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on where and when to deliver the controlled substances.

10. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

  c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

  d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

  e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of Border Patrol checkpoints.

  f. Drug smugglers therefore generate many types of evidence including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel and payment, names, photographs, text messaging, and phone numbers of co-conspirators.

11. Based upon my training and experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned that searches of cellular/mobile telephones, and SIM cards, associated with narcotics trafficking yields evidence:

  a. tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

5

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine, or some other federally controlled substances from Mexico into the United States;

    e.    tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

12. Based upon my training and experience, I am familiar with the ways in which drug traffickers conduct their business, including the various means and methods by which drug traffickers import and distribute drugs and use cellular telephones, emails, and text messages to facilitate drug activity. I am also familiar with the ways in which drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of couriers to transport currency and proceeds, the use of third parties and nominees to purchase or to hold title to assets, the use of multiple vehicles as conveyances for drugs and drug proceeds, and the installation of false/hidden compartments ("traps") in those vehicles to covertly transport drugs and drug proceeds.

13. I also know from training and experience that drug traffickers periodically change or "drop" their telephones and/or telephone numbers in an attempt to avoid law enforcement interception of their conversations. Moreover, it is my experience that narcotics distributors purposefully use multiple communication devices (for example, cellular telephones) to keep law enforcement from understanding the full scope of their own and/or their organization's illicit conduct, in the event that their communications are being intercepted. I also know that drug traffickers frequently use text messaging to communicate with other traffickers in an effort to thwart law enforcement interception of communications.

14. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones, pagers and portable radios to maintain communications with co-conspirators in order to further their

6

criminal activities. This is particularly true in cases involving distribution quantities of hard narcotics, such as methamphetamine. Typically, couriers smuggling controlled substances across the border are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substance. Narcotics smugglers and their organizations use cellular and digital telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular and digital telephones.

15. Subscriber Identity Module (SIM) Cards also known as subscriber identity modules are smart cards that store data for GSM cellular telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

### III.
### FACTS SUPPORTING PROBABLE CAUSE

16. On June 1, 2019, at approximately 1:13 p.m., Tamara RILEY (RILEY) arrived at the Andrade, California Port of Entry and applied for entry into the U.S. RILEY claimed to be a United States citizen. RILEY was driving a silver Nissan Versa bearing Arizona plate # D03645521 registered to her ("the Vehicle") RILEY gave a negative U.S. Customs declaration to Customs and Border Protection Officer (CBPO) Luna, and added that she drove from Phoenix, Arizona to Los Algodones, Mexico to consult with a dermatologist. During primary inspection, RILEY stated that she is the sole owner and driver of the Vehicle. RILEY was referred to secondary for further inspection.

17. In vehicle secondary, CBPO Mendez again received a negative declaration from RILEY. CBPOs utilized the buster (density reader) to thoroughly inspect the Vehicle and noticed high readings on the both doors. CBPO's inspected the doors through the window openings and were able to see packages inside the doors. A total of 60 packages

7

were removed from the doors and the hatch area of RILEY's vehicle. The packages were field tested positive for the properties of methamphetamine. The total weight of the packages was approximately 27. 28 kilograms (60.14 pounds).

18. At approximately 1:30 p.m., RILEY was placed under arrest.

19. CBPO Officers found the **Target Telephone** inside RILEY'S vehicle, and RILEY claimed ownership of the **Target Telephone. Target Telephone** was placed into evidence at the time of her arrest. **Target Telephone** consists of one (1) Alcatel blue in color cellular telephone with a shattered screen, as described in Attachment A, incorporated herein by reference.

20. On June 3, 2019, a complaint was filed charging RILEY with Importation of Methamphetamine in violation of Title 21, United States Code, Sections 952 and 960. On June 27, 2019, RILEY waived Indictment and was charged by Information with one count of violating Title 21, United States Code, Sections 952 and 960, in the Southern District of California in case number 19-cr-02372-H.

21. As part of my investigation, I obtained and listened to RILEY's post-arrest jail calls. On June 2, 2019, RILEY spoke with her mother. During that phone call, RILEY stated, among other things, that she "did something stupid" and that she did it for herself to "make some money."

22. Based upon my experience and investigation in this case, I believe RILEY, as well as other persons as yet unknown, were involved in an ongoing conspiracy to import methamphetamine or some other federally controlled substance and to distribute it within the United States. Based on my experience investigating narcotics smugglers, I also believe RILEY used the **Target Telephone** to coordinate with co-conspirators regarding the importation and delivery of methamphetamine or some other federally controlled substance, and to otherwise further this conspiracy both inside and outside the United States. Based on my training and experience, I have learned that recent calls made and received, telephone numbers, contact names, electronic mail (email) addresses, appointment dates, text messages, email messages, messages and posts from social

8

networking sites like Facebook, pictures and other digital information are often stored in the memory of a cellular telephone which identifies other persons involved in narcotics trafficking activities.

23. Further, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures and other digital information are stored in the memory of the **Target Telephone** which may identify other persons involved in narcotics trafficking activities. Accordingly, based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of RILEY, and her co-conspirators, such as telephone numbers, made and received calls, contact names, electronic mail (email) addresses, appointment dates, email messages, messages and posts from social networking sites like Facebook, pictures and other digital information are stored in the memory of the **Target Telephone**.

24. Drug trafficking conspiracies require intricate planning and coordination. This often occurs days, weeks, or even months prior to the actual importation of the drugs into the United States. Co-conspirators communicate with one another in efforts to ensure success in transporting their valuable cargo to its destination within the United States. Given this, I request permission to search the Target Device for items listed in Attachment B beginning on March 1, 2019 up to and including June 1, 2019. That date range is based on RILEY's arrest on June 1, 2019; based on my training and experience, RILEY likely would have been in communication with co-conspirators to plan and coordinate her smuggle attempt in the months leading up to her arrest.

//

//

//

9

## IV.

## METHODOLOGY

25. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed, and the nature of the data stored on the device. Cellular devices can be simple cellular telephone and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

26. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory card(s) will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

27. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual

10

review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## V.

## CONCLUSION

28. Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that RILEY used the **Target Telephone** to facilitate the offense of importation of a controlled substance. The **Target Telephone** was likely used to facilitate the offenses by transmitting and storing data, which constitutes evidence of violations of Title 21, United States Code, Sections 952 and 960.

29. Because the **Target Telephone** was promptly seized during the investigation of RILEY'S drug trafficking activities and has been securely stored, there is probable cause to believe that evidence of illegal activity committed by RILEY continues to exist on the **Target Telephone**.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

11

30. Based upon my experience and training, consultation with other agents in narcotics investigations, consultation with other sources of information, and the facts set forth herein, I believe that the items to be seized set forth in Attachment B (incorporated herein) are likely to be found in the property to be searched described in Attachment A (incorporated herein). Therefore, I respectfully request that the Court issue a warrant authorizing me, a Task Force Officer with Homeland Security Investigations, or another federal law enforcement agent specially trained in digital evidence recovery, to search the items described in Attachment A, and seize the items listed in Attachment B.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Imelda Moreno
Task Force Officer, HSI

Subscribed and sworn to before me this __18th__ day of July, 2019.

_____
HON. RUTH BERMÚDEZ MONTENEGRO
U.S. MAGISTRATE JUDGE